**UNITED STATES of America,**

v.

**Marion S. BARRY, Jr., Appellant.**

**No. 90–3251.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1991.

Decided July 12, 1991.

Rehearing and Rehearing En Banc Denied Aug. 29, 1991.

R. Kenneth Mundy, Washington, D.C., and William M. Kunstler, New York City, with whom Alan Dershowitz, was on the brief, Cambridge, Mass., for appellant.

Elizabeth Trosman, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Ste-

phens, U.S. Atty., John R. Fisher, Judith E. Retchin and Richard W. Roberts, Asst. U.S. Attys., Dept. of Justice, were on the brief, Washington, D.C., for appellee.

Before WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Marion S. Barry ("Barry" or "appellant") was indicted on May 10, 1990, while he was Mayor of the District of Columbia, and charged with one count of conspiracy to possess cocaine in violation of 21 U.S.C. §§ 846, 844(a), three counts of making false declarations to a grand jury in violation of 18 U.S.C. § 1623, and ten counts of possession of cocaine in violation of 21 U.S.C. § 844(a).[1] After a trial that lasted almost two months, a jury convicted Barry on August 10, 1990, of one count of possession of cocaine.[2] The district court subsequently sentenced Barry to six months in prison, to be followed by a one-year term of supervised release, and imposed a $5,000 fine. Barry now appeals both his conviction and his sentence. For the reasons discussed below, we affirm his conviction but remand for resentencing.

## I. CHALLENGE TO THE CONVICTION

■ Barry contends that his conviction violated due process because there was a variance between the indictment and the government's proof at trial. In particular, Barry claims that the district court should have granted his motion for judgment of acquittal because the government failed to prove with certainty that he possessed cocaine on the dates specified in the indictment: "[b]etween on or about November 7, 1989 and on or about November 10, 1989." Indictment, Count 12. Although a variance between the facts stated in the indictment and the evidence introduced at trial could require a judgment of acquittal if it prejudiced the defendant by depriving him "of notice of the details of the charge against him and protection against reprosecution," *Gaither v. United States*, 413 F.2d 1061, 1072 (D.C.Cir.1969), we do not believe a variance occurred in this case. *Cf. Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962); *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935).

Barry's claims revolve around the uncertainty in the testimony of Doris Crenshaw, the only government witness to the count of which Barry was convicted. Crenshaw testified that she visited Washington, D.C. and stayed at the Mayflower Hotel on three separate occasions in September, October, and November, 1989. Although she thought that Barry used cocaine with her at her hotel room on November 10, 1989, the last day of the November trip, she could not state conclusively that this occurred during her November trip rather than during the September or October trips. Thus, Barry concludes, there was a variance between the date specified in the indictment and the date established by the evidence admitted at the trial.

The problem with this argument is that it ignores other evidence in the record which indicates that Barry did possess cocaine with Crenshaw on November 10, 1989, the date specified in the indictment. Although at trial she could not recall the date on which the offense occurred, Crenshaw admitted that she had previously told the investigators and the grand jury that it occurred during the November trip. She was certain, moreover, that the offense occurred when Barry stopped by her room at the Mayflower in mid-morning of the last day of her trip as she was packing to go to the airport. In addition, Barry's phone records show that Crenshaw called at 9:00 a.m. on November 10, 1989, and left

---

1. The indictment handed down by the grand jury on May 10, 1990, superseded the initial indictment issued by the same grand jury on February 15, 1990. The initial indictment contained five counts of possession of cocaine and three perjury counts.

2. The jury also acquitted appellant of one count of possession of cocaine but was unable to reach a verdict on the remaining counts.

a message for him to call her "right away" at the Mayflower. Finally, Crenshaw testified that she thought the offense occurred on a weekend because Barry was dressed in casual clothes. Although none of the days that she stayed at the Mayflower in September, October, or November of 1989 were weekend days, the district court took judicial notice of the fact that November 10, 1989, a Friday, was Veterans' Day, a federal and District of Columbia holiday.

Viewing this evidence in the light most favorable to the government and giving the government the benefit of all legitimate inferences, *see United States v. Eniola*, 893 F.2d 383, 389 (D.C.Cir.1990), there was more than enough evidence from which the jury could have found that the offense occurred on November 10, 1989.[3] We are thus unable to conclude that there was a variance between the indictment and the proof at trial, and we affirm the district court's denial of the motion for judgment of acquittal.

## II. CHALLENGES TO THE SENTENCE

Barry also raises several challenges to his sentence. In particular, Barry claims that: (1) the district court was biased against him; (2) the court violated Federal Rule of Criminal Procedure 32(c) by failing to give him and his counsel ten days to review the presentence report prior to sentencing; (3) the court erroneously enhanced the sentence two levels on the ground that Barry obstructed the administration of justice within the meaning of Sentencing Guidelines § 3C1.1; and (4) in imposing a sentence at the upper end of the applicable guidelines range, the court relied on unfounded assumptions that Barry disappointed the community and gave "aid, comfort, and encouragement to the drug culture at large." For the reasons discussed below, we do not believe that the district court exhibited impermissible bias against Barry or that it relied on unfounded assumptions that Barry disappointed the

community. Nevertheless, we remand for resentencing because the district court failed to specify the applicable guidelines range and the court's factual findings do not support the conclusion that Barry obstructed the administration of justice within in the meaning of Sentencing Guidelines § 3C1.1.

### A. *Application of the Guidelines*

■ The district court's failure to explain how it was applying the Sentencing Guidelines has complicated our review of appellant's challenges to the propriety of the sentence awarded in this case. In fact, the government and appellant vigorously disagree about whether the district court sentenced appellant under guidelines level six, which provides for prison sentences of zero to six months, or level eight, which provides for prison sentences of two to eight months. *See* United States Sentencing Commission, *Guidelines Manual*, Sentencing Table (Nov.1989). After reading the district court's sentencing memorandum, we, too, are not entirely certain about what the district court thought the appropriate guidelines level was.

To determine the appropriate sentence under the Sentencing Guidelines, the district court must first determine two things: (1) the relevant offense level for the offense(s) committed by the defendant, and (2) the defendant's criminal history. *See* U.S.S.G. Sentencing Table, comment. (n.1) (1989). The relevant offense level is the sum of the base offense level for the offense(s) committed by the defendant and any enhancements or deductions based on the vulnerability or identity of the victim, the defendant's role in the offense, the defendant's willingness to accept responsibility for his wrongdoing, and/or the defendant's attempts to obstruct the investigation or prosecution of the offense. *See* U.S.S.G. Ch. 2, Ch. 3. With the offense level and the criminal history, the court can ascertain, from the Sentencing Table, the relevant guidelines range in months of im-

---

**3.** In fact, at sentencing, appellant's counsel argued that the offense did not entail an abuse of the office of mayor because when appellant "went along to Doris Crenshaw's room[,] [h]e was not on duty. It was a holiday, as I believe the evidence revealed. He was in a sweatsuit, as I believe the evidence revealed."

prisonment. The court may then impose a sentence within the guidelines range or, if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," the court may depart from the guidelines and impose a sentence outside the guidelines range. 18 U.S.C. § 3553(b). In this case, the court did not clearly explain how it went through this process.

First, the district court did not identify what it believed to be the relevant base offense level. We assume that the court found that the base offense level was six, because the presentence report correctly stated that Sentencing Guidelines § 2D2.1 provides a base offense level of six for possession of cocaine and both parties agree that it is the relevant base offense level. Nevertheless, we think it imperative that district courts state what the appropriate base level is to avoid any uncertainty on appeal. *See United States v. Williams*, 891 F.2d 921, 924 (D.C.Cir.1989).

Second, and more important in this case, the court did not specifically state whether it decided to award any enhancements or reductions to the base offense level, or whether it decided to depart from the relevant Sentencing Guidelines range. This latter error created the confusion about which guidelines range the court actually applied in this case. Appellant and the government agree that the court enhanced the sentence by two levels pursuant to Sentencing Guidelines § 3C1.1 because it found that appellant attempted to obstruct

the administration of justice. They also agree that the court denied the government's request for an additional two-level enhancement for abuse of a position of public trust under § 3B1.3; instead, they contend, the court considered appellant's public position under § 1B1.4 in deciding which sentence to impose within the applicable guidelines range.[4] They disagree, however, about whether the court granted appellant's request for a two-level reduction in the sentence for acceptance of responsibility within the meaning of § 3E1.1, and the findings themselves are equivocal on that point. Although we think the government may have the better interpretation of the court's findings,[5] we find it unnecessary for us to resolve this dispute in light of our decision to remand for resentencing.

There should not be disputes about what guidelines range the district court applied or how that range was selected. Congress gave both defendants and the government the right to appeal, *inter alia*, a sentence "imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. §§ 3742(a)(2), (b)(2). Congress similarly provided that "[u]pon review of the record, the court of appeals shall determine whether the sentence ... was imposed as a result of an incorrect application of the sentencing guidelines...." *Id.* § 3742(e)(2); *see also Williams*, 891 F.2d at 924. The parties' right of review is frustrated, however, if they do not know the legal basis for the district court's decision. Even so, we might have hesitated to require a remand if there had not been additional errors in the court's decision to en-

**4.** It is not clear to us that the parties have correctly interpreted the court's abuse of trust findings. In explaining its reasons for imposing the six-month sentence, the court stated that it was "[o]f greatest significance" that appellant "was at the time of his offense, the time of his conviction and is now at the time of his sentencing, the elected head of government, as Mayor the chief public official and personage of the city of Washington, D.C., the capital of the United States. His breach of public trust alone warrants an enhanced sentence." It is possible, therefore, that the court did decide to award an abuse of public trust enhancement. Our decision to remand obviates the need to resolve this issue, however, and we express no opinion

about whether there is evidence in the record from which the district court could make specific factual findings to support a conclusion that Barry abused a position of public trust within the meaning of § 3B1.3.

**5.** Pointing to the court's finding that he admitted that he was an alcoholic and "compulsive user" of cocaine, appellant contends that the court granted a reduction for acceptance of responsibility. The government points out, however, that the court also found that appellant's admission of cocaine use was "belated" and that he "persiste[d], until the moment of his sentencing, in a formal attitude of denial."

hance appellant's sentence by two levels for obstruction of justice. On remand, therefore, the district court should clearly state what it finds the relevant offense level—both the base offense level and any applicable enhancements or reductions—to be and, if applicable, why it is appropriate to depart from the guidelines and impose a sentence outside the relevant guidelines range.

### B. *Obstruction of Justice*

 Barry contends, first, that the district court erred in enhancing his sentence by two levels for obstruction of justice under Sentencing Guidelines § 3C1.1. That section states: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (1989). The district court explained that a § 3C1.1 enhancement was warranted because the evidence indicated that Barry "employed subterfuge and false testimony—his own and that of others—in an attempt to avoid exposure and prosecution altogether. The court concludes the defendant's conduct in that regard represented a willful attempt at obstruction of justice."

On appeal, we will "uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v. Young*, 932 F.2d 1510, 1512 (D.C.Cir.1991) (internal quotations omitted); *see also United States v. Irabor*, 894 F.2d 554, 555 (2d Cir.1990) (question of whether § 3C1.1 applies to the defendant's obstructive conduct is reviewed *de novo* because it involves the legal interpretation of a guideline). Although the court did not say so explicitly, we accept

the parties' assertion that, at a minimum, the testimony the court found to be false was the January, 1989 grand jury testimony of appellant and Charles Lewis.[6] *Cf.* Presentence Report at 3 (finding a § 3C1.1 enhancement warranted because appellant attempted to obstruct grand jury proceedings by falsely testifying in January, 1989 that he had never given cocaine to or received cocaine from Lewis). In December, 1988, a federal grand jury began investigating, *inter alia*, whether Barry or Lewis had possessed or distributed cocaine in the District of Columbia in violation of federal law and whether they possessed cocaine together at the Ramada Inn in the District of Columbia on December 22, 1988. *See* Indictment, Count 8. The following January, Barry and Lewis both testified before the grand jury that they did not possess cocaine at the Ramada Inn, and that they had never given each other cocaine. *See* Indictment, Counts 8, 9 & 10. At Barry's trial, however, Lewis testified that he and Barry had, in fact, used cocaine together at the Ramada Inn and on several other occasions. Moreover, Lewis said that he had lied to the police and grand jury about his own and Barry's use of cocaine and that Barry had encouraged him to lie to protect both of them.

As this brief summary of the record indicates, there was ample evidence to support the trial court's implicit factual findings that Barry lied and encouraged Lewis to lie to the grand jury in order to avoid prosecution. Nevertheless, appellant contends that the § 3C1.1 enhancement must be reversed because § 3C1.1 requires that there be a "direct, clear and substantial nexus" between the obstructive conduct and the offense of conviction. That nexus cannot be shown in this case, appellant continues, because his and Lewis' perjuries were

---

**6.** Although appellant does not mention it, the government also contends that the "false testimony" found by the trial court included Rasheeda Moore's grand jury testimony in May, 1989, in which she falsely claimed that she had never used drugs with appellant. At appellant's trial, Moore did admit that she lied to the grand jury because she "was trying to protect [herself] and ... the Mayor." Unlike Lewis, however, Moore

did not expressly say that Barry knew she was going to lie to the grand jury. Instead, she testified only that he told her to "be careful." Given the vagueness of this testimony and the absence of specific findings by the trial court, we are unwilling to assume that the trial court found that Barry encouraged Moore to lie in order to avoid prosecution.

"completely unrelated" to the offense of conviction, which did not occur until ten months after the perjury. Although that argument is not without surface appeal, on reflection we decline to reverse the § 3C1.1 enhancement on the ground that the perjury could not have been found to be sufficiently related to the offense of conviction to justify a § 3C1.1 enhancement. We do conclude, however, that we must vacate the sentence and remand for resentencing because the factual findings made in support of the § 3C1.1 enhancement fail to explain in any respect how appellant's perjurious grand jury testimony in January, 1989 about his relationship and prior cocaine use with Lewis constituted an attempt to obstruct the investigation into his possession of cocaine with Crenshaw some ten months later. The absence of such an explanation leaves us unable to discern whether the trial court thought that appellant's perjury constituted an attempt to obstruct the administration of justice with respect to the offense of conviction or whether the trial court was proceeding on the erroneous belief that § 3C1.1 does not require such a finding. Thus, although we in no way condone Barry's perjury or his urging of others to commit perjury, we are constrained to remand the sentencing portion of this case for clarification and application of the correct legal standard. *See United States v. Caballero*, 936 F.2d 1292, 1299–1300 (D.C.Cir. June 21, 1991); *United States v. Lam Kwong–Wah*, 924 F.2d 298, 307 (D.C. Cir.1991).

Section 3C1.1 indicates that the obstruction of justice enhancement does not apply to any and all obstructive conduct that a defendant may have attempted or committed, but instead applies only to willful attempts "to obstruct or impede the administration of justice during the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1 (1989).[7] Although the guidelines do not define the term, we agree with our sister circuits that the term "in-

stant offense" in § 3C1.1 refers solely to the offense of conviction, in this case the Crenshaw incident in November, 1989. *See, e.g., United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991); *United States v. Dortch*, 923 F.2d 629, 632 (8th Cir.1991); *United States v. Roberson*, 872 F.2d 597, 609 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). In addition to being the more natural reading of the language of the section, this interpretation is supported by the commentary to § 3C1.1. The commentary explains that the § 3C1.1 enhancement is inapplicable if the defendant is convicted of an offense involving the administration of justice (like perjury or obstruction of justice) unless "a significant further obstruction occurred during the investigation or prosecution of the obstruction offense itself." U.S.S.G. § 3C1.1, comment. (n. 4) (1989). *See also* U.S. Sentencing Commission, Questions Most Frequently Asked about the Sentencing Guidelines, Question 35 at 9 (Vol. IV, Dec. 1, 1990) (if the "instant offense is bribery of a witness" and the "defendant bribed the witness not to testify against him in another case," the obstruction of justice enhancement does not apply because "[s]ection 3C1.1 states that the obstruction must have taken place 'during the investigation or prosecution of the *instant* offense.'") (emphasis in original). This commentary indicates, therefore, that the "instant offense" is the offense of conviction.

In addition, as § 3C1.1 itself states, the enhancement applies only if the obstruction or attempted obstruction took place "during the investigation or prosecution" of the instant offense. This language admittedly poses a problem of construction. If one were to construe the language of § 3C1.1 literally, one might conclude, as appellant does, that the obstruction must have occurred *after* the authorities had already begun investigating the offense of conviction. Such an interpretation would, how-

---

7. Although the 1989 Sentencing Guidelines, which govern appellant's sentence, state that § 3C1.1 applies to attempts to obstruct the administration of justice "during the investigation or prosecution of the instant offense," we note

that the 1990 Sentencing Guidelines clarify that § 3C1.1 applies to attempts to obstruct the administration of justice during sentencing of the instant offense as well. *See* U.S.S.G. § 3C1.1 (1990).

ever, produce some counterintuitive, even absurd, results. The enhancement would not apply to a defendant who attempts to obstruct an investigation even before he commits the offense, as for example, by bribing a prosecutor or police officer not to undertake an investigation of his future conduct. On the other hand, a defendant who attempts to obstruct the investigation of a crime completely unrelated to the offense of conviction would receive the enhancement simply because the obstruction of the unrelated crime occurred during the investigation or prosecution of the offense of conviction, *e.g.*, a defendant who bribes an IRS agent to obtain a favorable audit of his tax returns during a prosecution for carrying an illegal firearm. Neither result makes sense.

Fortunately, the language of § 3C1.1 is not our only guide. The commentary explains that § 3C1.1 "provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, *in respect to* the instant offense." U.S.S.G. § 3C1.1, comment. (1989) (emphasis supplied). Thus, the commentary clarifies that the significant factor is not the mere timing of the obstruction but rather whether the defendant attempted to obstruct the administration of justice *with respect to* the investigation or prosecution of the offense of conviction.[8] In other words, the commentary reinforces the more plausible interpretation of § 3C1.1 as applying if the defendant obstructed or attempted to obstruct the administration of justice with respect to the investigation or prosecution of the offense of conviction by destroying evidence, committing perjury,

unlawfully influencing a juror, or taking other action calculated to obstruct the investigation or disposition of the offense of conviction. *See* U.S.S.G. § 3C1.1, comment. (n. 1) (1989).

The case law also supports this common sense interpretation. Our sister circuits have affirmed enhancements awarded under § 3C1.1 when the defendant lied to authorities about a fact relevant to the offense of conviction or attempted to conceal evidence of the offense of conviction from authorities even though, at the time of the obstructive conduct, the authorities were actually investigating an offense other than the offense of conviction. *See, e.g., United States v. Dortch,* 923 F.2d 629, 631–32 (8th Cir.1991) (defendant stopped for a traffic violation tossed a package of cocaine out the window; § 3C1.1 enhancement proper when defendant pled guilty to possession of cocaine with intent to distribute even though there was "no ongoing drug investigation at the time he tossed the cocaine out the window"); *United States v. Roberson,* 872 F.2d 597, 609 (5th Cir.) (defendant placed in police car after arrest for public intoxication attempted to conceal stolen credit card; § 3C1.1 enhancement proper when defendant sentenced for credit card fraud), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *cf. United States v. Lato,* 934 F.2d 1080, 1082–83 (9th Cir.1991) (§ 3C1.1 enhancement proper because defendant, who participated in an insurance fraud scheme, used false identification documents and instructed a witness to lie and fabricate evidence in response to an investigation by state officials into conduct underlying the offense of conviction even though he was eventually prosecuted and convicted by federal officials).

---

**8.** The commentary to the 1990 version of § 3C1.1 similarly implies that the Sentencing Commission did not intend to bar consideration of attempts to obstruct the administration of justice with regard to the offense of conviction solely because the obstruction occurred before the commencement of the investigation of the offense. The commentary explains that the enhancement applies if the defendant did or attempted to destroy or conceal "evidence material to an official investigation or judicial proceeding (*e.g.,* shredding a document or destroy-

ing ledgers upon learning that an official investigation has commenced or *is about to commence*)." U.S.S.G. § 3C1.1, comment. (n. 3(d)) (1990) (emphasis supplied). While not specifically applicable to this case which is governed by the 1989 guidelines, the 1990 commentary is instructive because it suggests that the Sentencing Commission itself does not interpret the language of § 3C1.1 as precluding consideration of obstructive conduct that occurs before the commencement of the investigation of the offense of conviction.

Given the commentary and the case law interpreting § 3C1.1, we conclude that the enhancement applies if the defendant attempted to obstruct justice in respect to the investigation or prosecution of the offense of conviction, even if the obstruction occurred before the police or prosecutors began investigating or prosecuting the specific offense of conviction. In our view, the enhancement applies if the defendant's obstructive conduct was calculated to obstruct the investigation or prosecution of the offense of conviction.

We thus reject Barry's argument that his perjury could not, as a matter of law, support a § 3C1.1 enhancement because at the time he committed perjury, the grand jury was investigating only his drug use with Lewis rather than his drug use with Crenshaw. Although a much closer question, we also reject Barry's argument that his perjury could not support a § 3C1.1 enhancement because he lied only about his drug use with Lewis, and not about his drug use with Crenshaw. We can conceive of situations in which a defendant's lies, although not specifically concerning the offense of conviction, could nonetheless be a willful attempt to mislead authorities about or to obstruct the investigation of the offense of conviction. Assume, for example, that in response to grand jury questioning, a defendant falsely testified that he was not selling illegal drugs in order to cover up both the fact that he was selling drugs and that he was laundering the proceeds from the drug sales. Assume further that the grand jury subsequently discovered the truth, and the defendant was convicted of money laundering, but not drug distribution. In this hypothetical, the trial court could award a § 3C1.1 enhancement even though the defendant lied only about his drug sales because the lies were intended to mislead the grand jury about the money laundering as well.

In short, we are remanding rather than reversing the § 3C1.1 enhancement awarded in this case because neither the timing of the perjury nor the subject matter of the perjury *per se* precludes the court from finding that the perjury constituted obstruction of justice with respect to the investigation or prosecution of the offense of conviction. And any necessary findings as to whether the perjury constituted a willful attempt to mislead authorities about or to obstruct the investigation of the offense of conviction must be made initially by the district court rather than the court of appeals.

■ In reaching this conclusion, we reject the government's argument that the district court's findings are legally sufficient to affirm the § 3C1.1 enhancement and that it need not show that Barry's perjury constituted an attempt to mislead authorities about or to obstruct the investigation or prosecution of the offense of conviction. The government's argument relies on Sentencing Guidelines § 1B1.3(a)(1), which states that

> [u]nless otherwise specified, ... adjustments in Chapter Three, [which includes § 3C1.1] shall be determined on the basis of ... all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a)(1) (1989). In the government's view, the trial court's findings support a § 3C1.1 enhancement because appellant's perjury was "in preparation for" the offense of conviction, was "otherwise in furtherance of that offense," or was an attempt to avoid "responsibility for that offense." We are not persuaded.

As an initial matter, we note that the trial court's factual findings do not support the government's assertion that appellant's and Lewis' perjurious testimony was given "in preparation for," or "in furtherance of," or constituted an attempt to avoid responsibility for the offense of conviction. The government's contention rests on the bare assertion that Barry and Lewis were involved in a conspiracy to possess cocaine and that Barry's possession of cocaine with

Crenshaw was an act in furtherance of that conspiracy. From there, the government argues that Barry and Lewis lied to the grand jury in an attempt to mislead the grand jury about and to impede the investigation of the conspiracy to possess cocaine, which included the offense of conviction. However, the jury failed to convict Barry of the conspiracy count of the indictment, and the district court made no findings at sentencing that he was accountable on the conspiracy charge, *see* U.S.S.G. § 1B1.3(a)(1), much less that both the perjured grand jury testimony and Barry's possession of cocaine with Crenshaw were acts in furtherance of that conspiracy.

More importantly, we do not think that § 1B1.3(a)(1) expands the conduct that will support a § 3C1.1 enhancement. In other words, § 1B1.3 does not authorize a § 3C1.1 enhancement on the ground that the obstructive conduct was "in furtherance of" or "in preparation for" the offense of conviction rather than being calculated to obstruct the investigation or prosecution of the offense of conviction. Section 1B1.3 states that "[u]nless otherwise specified," the Chapter Three adjustments shall be based on the conduct described in § 1B1.3. Section 3C1.1 states, however, that an enhancement should be awarded if the defendant "attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." And, as discussed above, the commentary to § 3C1.1 states that the section applies if the defendant attempts to mislead authorities or those involved in a judicial proceeding or otherwise interfere with the disposition of criminal charges "in respect to the instant offense." Thus, to the extent that § 1B1.3 would, by itself, allow a sentencing court to award an obstruction of justice enhancement because the obstructive conduct was "in furtherance of" or "in preparation for" the offense of conviction, we think that the Sen-

tencing Commission has "specified otherwise" in § 3C1.1.

In this respect, we agree with the Second Circuit in *United States v. Perdomo*, 927 F.2d 111, 113 (2d Cir.1991). The defendant in that case was arrested by agents of the Vermont Drug Task Force after he and an accomplice went to the airport in Burlington, Vermont to retrieve a package of cocaine arriving from Miami, Florida. Charged with five narcotics-related counts based on his role in the distribution of that cocaine, the defendant subsequently pled guilty to one count of conspiracy to distribute cocaine. The presentence report later revealed that the defendant had been involved in a larger conspiracy to transport cocaine from Miami to Montreal, Canada, that Burlington had sometimes been a transit point on the distribution route, and that the defendant had, several months earlier, attempted to dispose of a large quantity of cocaine before federal investigators raided a "stash" house in Miami where the cocaine was stored. *Id.* Finding that the defendant's earlier drug sales and the conspiracy count to which he pled guilty were part of the "same course of conduct," the Second Circuit affirmed the district court's decision, pursuant to § 1B1.3(a)(2),[9] to calculate the defendant's base offense level based on the quantity of cocaine the defendant previously agreed to deliver to a drug dealer in Montreal, as well as the cocaine recovered at the time of the defendant's arrest in Burlington. *Id.* at 115. Nevertheless, the Second Circuit reversed the § 3C1.1 enhancement because the obstructive conduct relied on by the district court—the defendant's earlier attempt to destroy cocaine—did not pertain to the offense of conviction. *Id.* at 118. The court reasoned that because the "instant offense" is the offense of conviction, "§ 3C1.1 refers to efforts to obstruct the prosecution of the conviction offense only." *Id.*

Like the Second Circuit, we think that the language in § 3C1.1, as well as the

---

**9.** Sentencing Guidelines § 1B1.3(a)(2) states that "[u]nless otherwise specified," the base offense level for certain specified offenses, including the distribution of drugs, and any Chapter Three adjustments thereto, shall be based on

"all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (1989).

explanatory commentary, indicate that an obstruction of justice enhancement is warranted only if the defendant attempted to obstruct the investigation, prosecution, or sentencing of the offense of conviction. Because the district court has not adequately explained how Barry's and Lewis' perjurious grand jury testimony was calculated to obstruct the investigation of the offense of conviction, we are constrained to conclude that the district court's decision to award an enhancement pursuant to § 3C1.1 is infirm.

We want to clarify, however, that we hold only that the initial district court findings are insufficient to support a § 3C1.1 enhancement. In particular, we express no opinion about the merits of the government's contention that the district court could have awarded a § 3C1.1 enhancement based on appellant's attempts to influence the jury through public pronouncements. While the commentary indicates that attempts to "threaten[ ], intimidat[e], or otherwise unlawfully ... influence a ... juror, directly or indirectly," may provide a basis for awarding a § 3C1.1 enhancement, it also cautions that "suspect testimony and statements should be evaluated in a light most favorable to the defendant." U.S. S.G. § 3C1.1, comment. (nn. 1(d) & 2) (1989). Furthermore, § 3C1.1 "is not intended to punish a defendant for the exercise of a constitutional right," and "[a] defendant's denial of guilt is not a basis for application of this provision." U.S.S.G. § 3C1.1, comment. (n. 3) (1989). In the absence of factual findings about what appellant said and how his statements were intended to influence the jury, we think it inadvisable for us to address the difficult issues attendant to the government's assertion that appellant's public statements could be the basis for a § 3C1.1 enhancement. In this case, the district court expressly declined to make such findings, explaining that it was ignoring what it "perceive[d] to have been the defendant's efforts, once prosecution had commenced, to

induce the jury to disregard the law and the evidence." We therefore decline to speculate about whether there is evidence in the record from which the district court could conclude that Barry obstructed the administration of justice within the meaning of § 3C1.1.

### C. *Reliance on Appellant's "Letting Down the Community"*

Appellant also claims that his sentence should be vacated because in selecting a sentence within the relevant guidelines range,[10] the district court relied on unfounded assumptions that he let down the community and gave "aid, comfort, and encouragement to the drug culture at large." We disagree.

■ Before deciding what sentence to impose, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). In addition, a judge may draw reasonable inferences from the evidence, although he may not rely on mistaken information or baseless assumptions. *See Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *United States v. Lemon*, 723 F.2d 922, 933 (D.C.Cir.1983). Because "a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose," *Tucker*, 404 U.S. at 446, 92 S.Ct. at 591, appellate courts review sentences within the statutory maximum only to ensure that the court did not rely on inaccurate information or improper factors. *See Dorszynski v. United States*, 418 U.S. 424, 441, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855 (1974); *Lemon*, 723 F.2d at 933.

■ Notwithstanding appellant's claims, the record does not reflect that the district court relied on erroneous information or

---

10. As discussed above, the parties disagree about whether the district court sentenced appellant under level six or eight. Consequently, they disagree about whether the court imposed

what it thought was the maximum allowable sentence, or whether the sentence was two months less than the maximum.

baseless assumptions. Appellant and his counsel effectively admitted that appellant had failed as a role model and that he had disappointed the community. In his letter to the judge before sentencing, for example, Barry admitted that his actions had caused "the citizens of [Washington, D.C.] shame and enormous pain" and that his behavior "hurt, confused and disappointed young people." In addition, Mr. Mundy, Barry's counsel, acknowledged at sentencing that Barry "stood before the public—before our youth—as an example, a person that [sic] should have been a role model because he was the number-one man in the District of Columbia Government." Mr. Mundy admitted, moreover, that Barry had "failed in his task to be an example—to be a leader." Therefore, in finding that Barry let down the community, the district court relied primarily on facts that Barry and his counsel admitted: namely, that Barry "failed as the good example he might have been to the citizens of Washington, D.C.— and, in particular, to the young," and that his conduct "contributed to the anguish that illegal drugs have inflicted on this city in so many ways for so long."

Barry did not specifically admit, however, that his actions gave "aid, comfort, and encouragement to the drug culture at large." Although his argument is not fully developed, Barry appears to contend that this statement, read in isolation, constitutes an unsupported finding that his actions had some adverse effect on the community, such as increasing drug use or drug trafficking. We interpret the court's observa-

tion differently. In our view, the statement is simply part of the court's finding that Barry failed as a leader and role model by sending a signal condoning the use of illegal drugs.[11] This finding is clearly supported by the record evidence and, therefore, provides no basis for reversing Barry's sentence. *Cf. United States v. Jackson,* 649 F.2d 967, 983 (3d Cir.) (sentencing based on proper considerations where court stated that the defendant had "affected many lives in providing the drugs which addicted numerous individuals and in promoting the crimes which are perpetrated to pay for the drugs"), *cert. denied,* 454 U.S. 871, 102 S.Ct. 341, 70 L.Ed.2d 176 (1981).

### D. *Rule 32(c) Claim*

██ Appellant also contends that his sentence should be reversed because the district court did not delay sentencing until he and his counsel had ten days to review the presentence report as required by Federal Rule of Criminal Procedure 32(c).[12] Appellant received the presentence report on Tuesday, October 16, 1990, and sentencing was held ten days later on Friday, October 26, 1990. But because Federal Rule of Criminal Procedure 45(a) provides that "[w]hen a period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation," the government concedes that sentencing should have been deferred until Tuesday, October 30, to allow appellant ten working

---

**11.** The district court stated, in pertinent part, that

the prevalence of the public rumors of defendant's frequent and conspicuous drug use—never dispelled, and now unfortunately shown to have been true—has given aid, comfort and encouragement to the drug culture at large, and contributed to the anguish that illegal drugs have inflicted on the city in so many ways for so long.

His prominence inspired others to emulate him and to behave as they believed he did.

Having failed as the good example he might have been to the citizens of Washington, D.C. —and, in particular, to the young who are so much more likely to respond to example than to admonition—the defendant must now become an example of another kind.

**12.** That rule states, in relevant part, that "[a]t least 10 days before imposing the sentence, unless this minimum period is waived by the defendant, the court shall provide the defendant and the defendant's counsel with a copy of the report of the presentence investigation...." Fed.R.Crim.P. 32(c)(3)(A). In addition, 18 U.S.C. § 3552(d) similarly states that "[t]he court shall assure that a [presentence report] is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant." Because appellant's counsel repeatedly requested the court to delay sentencing until he had ten days to review the report, it is clear that appellant did not waive his right to the ten-day notice period.

days to review the presentence report.[13] Nevertheless, the government contends, the technical noncompliance with the rule does not justify a remand in this case because appellant has not shown that he was prejudiced by the court's refusal to defer sentencing. We agree.

Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Consequently, we agree with our sister circuits that the trial court's failure to provide the full ten-day notice required by Rule 32(c) does not provide a basis for vacating a sentence and remanding for resentencing unless the defendant suffered some prejudice. *See, e.g., United States v. Turner*, 898 F.2d 705, 714 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990); *United States v. Wright*, 873 F.2d 437, 445 (1st Cir.1989).

In this case, Barry has not demonstrated that he was prejudiced by the court's failure to defer sentencing until he and his counsel had ten days to review the presentence report. Before the sentencing hearing, Barry's counsel filed detailed responses to the presentence report and the government's sentencing memoranda, fully addressing every issue that Barry now raises on appeal. We are, therefore, constrained to conclude that the Rule 32(c) violation does not provide an independent basis for remanding for resentencing because Barry has not shown that the court's error caused him any tangible harm.

## E. *Bias of the District Court*

Appellant requests, finally, that we vacate his sentence and remand for resentencing before a different district court judge because the district court was improperly biased against him at the time of sentencing. For the reasons discussed below, we find no merit to appellant's bias claims. Thus, although we vacate the sentence because the district court failed clearly to explain how it was applying the Sentencing Guidelines and because the factual findings do not support the award of the obstruction of justice enhancement, we remand for resentencing before the same district court judge.

The statute governing recusal for judicial bias, 28 U.S.C. § 455,[14] states that a judge of the United States "shall disqualify himself" if "he has a personal bias or prejudice

---

13. Neither the parties nor the district court focused on the applicability of Rule 45 below. At the presentencing hearing on October 19, 1990, the government argued that it would not violate the ten-day rule to go ahead with the sentencing hearing on October 26, because appellant's counsel received the presentence report on October 16. Appellant responded that it would violate the rule to go ahead with sentencing on October 26 because, in his view, he was entitled to have the report for ten full days prior to sentencing and the day of the delivery of the document does not count.

14. That section provides, in relevant part, that
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 (b) He shall also disqualify himself in the following circumstances:
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...
 28 U.S.C. § 144 also provides a procedure for bringing motions for recusal for judicial bias. That section states:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.
28 U.S.C. § 144. Because appellant has never filed an affidavit stating the facts underlying his bias claim, we will evaluate his claim under § 455 rather than under § 144. We note, however, that "since recusal can be sustained under [§ 455] on the same ground that exists in 144, appellant[ ] ha[s] lost little by [not pursuing his] section 144 claim." *United States v. Heldt*, 668 F.2d 1238, 1270 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

concerning a party." [15] To be disqualifying, the court's bias and prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). None of the statements and rulings that appellant claims are indicative of the trial court's racial and personal bias against him satisfy that test.[16]

 Barry identifies three incidents that he believes indicate the trial court's bias. First, Barry points to the court's refusal to permit two well-known black ministers, Reverend Farrakhan and Bishop Stallings, to attend the trial using appellant's reserved "passes." Although a legal

ruling may not itself serve as the basis for a motion to disqualify, *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1301 (D.C.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *United States v. Haldeman*, 559 F.2d 31, 133 (D.C. Cir.1976) (*en banc*), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), a particular judicial ruling "can be *evidence* of an extrajudicial bias or prejudice." *United States v. Heldt*, 668 F.2d 1238, 1272 n. 72 (D.C.Cir.1981) (emphasis in original), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). Appellant argues that the exclusion of Farrakhan and Stallings without an evidentiary hearing indicates that the court's impressions were gained from extrajudicial sources.[17] Fur-

---

15. Although 28 U.S.C. § 455 does not contain an explicit timeliness requirement, the government argues that appellant waived the bias claim by not filing a disqualification motion at the sentencing hearing or filing a motion for resentencing on the ground that the trial court was biased. The government points out that at least one circuit has found the failure to file a timely disqualification motion to bar the party from raising, on appeal, a claim that the judge was biased. *See United States v. York*, 888 F.2d 1050, 1053–55 & n. 6 (5th Cir.1989). Other circuits have held, however, that the failure to file a timely disqualification motion in the trial court results in a higher burden of proof on appeal, but does not constitute a complete waiver of the claim. *See, e.g., Noli v. Commissioner*, 860 F.2d 1521, 1527 (9th Cir.1988); *United States v. Schreiber*, 599 F.2d 534, 535 (3d Cir. 1979) (applying plain error standard), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Still other circuits have held or suggested that there is a timeliness requirement for recusal motions based on the *appearance* of impartiality, while claims based on *actual* bias may be raised for the first time on appeal. *See, e.g., United States v. Murphy*, 768 F.2d 1518, 1539–41 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986); *United States v. Slay*, 714 F.2d 1093, 1094–95 (11th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *cf., Jenkins v. Sterlacci*, 849 F.2d 627, 634–35 (D.C.Cir.1988) (holding that the defendant's participation, without objection, in the hearing before a special master constituted a waiver of his claim that the special master should have disqualified himself under Canon 3 C(1) of the Code of Judicial Conduct for United States Judges because there was an appearance of impartiality, but not a waiver of his claim that the special master was actually biased). We do not decide which of these cases is correctly decided, however, be-

cause we find no merit to appellant's claim of bias in this case.

16. In his brief appellant did not explicitly state that these incidents demonstrated that the trial court harbored a racial bias against him; at oral argument, however, appellant's counsel expressly claimed that these incidents demonstrated that the court harbored a racial, as well as a personal, bias against him. "This court ordinarily will refuse to disturb judgments on the basis of claims not adequately briefed on appeal." *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210 (D.C.Cir.1986). In addition, "[w]e generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief" because it is "unfair to the appellee, [and] entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *Id.* at 1210–11. These same concerns make us reluctant to address an argument raised for the first time at oral argument. Nevertheless, we will address the merits of appellant's racial bias argument because at base it involves only a different characterization of the evidence of bias discussed in appellant's briefs. *Cf. Gruca v. Secretary of Army*, 436 F.2d 239, 242 (D.C.Cir.1970) (considering "[a]nother aspect of the waiver argument [that] was not directly confronted in the briefs but was raised in oral argument"), *cert. denied*, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971).

17. Appellant subsequently appealed the court's decision to exclude the ministers, claiming that the action violated the sixth amendment. This court dismissed his appeal, however, finding that it lacked jurisdiction to hear his claims at that time. *United States v. Barry*, No. 90–3151, 1990 WL 104925 (July 5, 1990). Reverend Far-

thermore, appellant contends that the court referred to Farrakhan and Stallings in derogatory terms. Together, appellant asserts, these facts indicate that the court harbored a "manifest distrust" of him and the jury and thought that he was "guilty of everything." Contrary to appellant's assertions, the trial court's actions and explanations do not indicate that the court harbored any negative preconceptions about *appellant,* the merits of his case, or the sentence that should be awarded. The court excluded Reverend Farrakhan "because I find that his presence would be potentially disruptive, very likely intimidating and he is a persona non grata for the trial of this case." Bishop Stallings similarly was excluded because "[h]e is, once again, for the same reason, in my judgment, not an ordinary member of the public and his presence would very likely have the same effect as Mr. Farrakhan's." Even assuming that these findings were erroneous and that the absence of a hearing indicated that the court made these findings on the basis of extrajudicial information, we do not believe that they evidence animus against *appellant* or an inability to rule impartially on the merits of his case. *Cf. United States v. Parrilla Bonilla,* 626 F.2d 177, 180 (1st Cir.1980) (erroneous use of judicial notice and erroneous factual findings are not an indication of bias in the absence of an indication that the court had an animus that would affect his ability to rule impartially). There is no indication in the record that the court thought appellant had orchestrated Stallings' and Farrakhan's appearances in order to disrupt the trial or influence the jury.[18] Nor is there any indication that the court thought appellant shared Stallings' and Farrakhan's

views. Thus, even if the court relied on extrajudicial information and erroneously concluded that Stallings and Farrakhan would be a disruptive influence at the trial, there is no indication that the court harbored similar feelings about appellant. Instead of demonstrating bias against appellant, the court's actions, while perhaps misguided, reflected a concern for preserving a fair and orderly trial.

■ Appellant's second allegation of bias stems from remarks made by the trial court at sentencing. Appellant objects to the court's statement that "[t]he jurors will have to answer to themselves and to their fellow citizens for the way in which they discharged their duty." In appellant's view, this statement is further indication of the court's "pattern of bias" against appellant and its displeasure with the jury verdict, which, appellant contends, the court transferred to him at sentencing. Again, we disagree. Although this statement may indicate that the court thought appellant was guilty of more counts than he was convicted of, there is no indication that the court reached this conclusion based on anything other than its participation in the case. Moreover, it is permissible for the court to consider evidence relating to nonconviction counts in sentencing. *See, e.g., United States v. Campbell,* 684 F.2d 141, 152–55 (D.C.Cir.1982). Consequently, we find no basis for concluding that the court's remarks at sentencing illustrate an impermissible extrajudicial bias against appellant. *Cf. Grinnell Corp.,* 384 U.S. at 583, 86 S.Ct. at 1710 (no disqualifying bias found where "[a]ny adverse attitudes that [the judge] evinced toward the defendants

rakhan and Bishop Stallings also appealed their exclusion on first and fifth amendment grounds, but this court remanded so they could present their claims to the district court in the first instance. *Farrakhan v. United States,* No. 90–3150, 1990 WL 104925 (July 5, 1990). No further judicial proceedings occurred, however, because the district court subsequently allowed the ministers to attend the trial.

**18.** In fact, the record indicates that appellant did not know in advance that the ministers

planned to attend the trial. Appellant's counsel told the trial court that "Bishop Stallings has presented himself at the courthouse today, unbeknownst to the defense, he showed up as a friend and to give support to the Mayor." Similarly, appellant's counsel explained that "the honorable Minister Louis Farrakhan has made an appearance at the court today.... We have four passes and one of the persons who has one of the passes is willing to give her pass to Minister Farrakhan...."

were based on his study of the depositions and briefs").

■ Appellant alleges, finally, that the trial court's refusal to give him and his counsel ten days to review the presentence report as required by Fed.R.Crim.P. 32(c) illustrates the court's bias. On October 19, 1990, the court held a hearing to consider the accuracy of the presentence report. At that hearing, the trial court denied appellant's motion to delay consideration of the accuracy of the presentence report, finding that the preparation of the presentence report had been delayed primarily because appellant had not submitted material to the probation officer in a timely fashion and, therefore, appellant had waived his Rule 32(c) objection. Consequently, the court stated that it would go ahead with sentencing on October 26, 1990, as planned. Appellant's counsel renewed the Rule 32(c) objection at the sentencing hearing on October 26, explaining that the probation officer was available to testify that appellant had cooperated with the presentence investigation and had not been responsible for the delay in the preparation of the presentence report. Although the court responded that the probation officer's testimony was not necessary, it allowed appellant's counsel to make a proffer as to what the probation officer's testimony would be. The court then proceeded with the sentencing hearing.

Appellant contends that the court's erroneous conclusion that appellant was responsible for the delay in the preparation of the presentence report and its denial of his request to defer sentencing are indicative of the court's "high degree of bias" against appellant and its determination to speed to sentencing without regard to appellant's rights. The record does not support this assertion. Instead, the record indicates that the court was concerned that appellant have an opportunity to note his objections to the presentence report. Although it denied the motion to delay sentencing, the court specifically told appellant's counsel that he could raise any additional objections to the presentence report at the sentencing hearing and the court would consider them before imposing the sentence. Furthermore, the court remarked to appellant's counsel at the opening of the sentencing hearing, "for someone who didn't think he had enough time to respond, that was a rather comprehensive submission you presented last night." This indicates to us that the court thought that appellant had not been prejudiced by its decision to go ahead with sentencing as planned. Thus, while we do not condone the court's refusal to defer sentencing as appellant requested, we are unable to conclude that this erroneous ruling indicates that the court was biased against appellant or determined to ignore his rights.

In sum, although the trial court may have made some erroneous legal rulings in the trial and at sentencing, the record in no way supports Barry's claims that the court harbored a racial or personal bias against Barry or that the court based Barry's sentence on anything other than what it learned during its participation in the case. There is, therefore, no basis for remanding for resentencing before a different judge.

### III. Conclusion

For the foregoing reasons, we affirm Barry's conviction, but we remand for resentencing under a proper application of the Sentencing Guidelines. Because we find Barry's allegations of judicial bias to be without merit, we decline his request that we remand for resentencing before a different judge.

*It is so ordered.*