**UNITED STATES of America**

v.

**Marion S. BARRY, Jr., Appellant.**

**No. 91–3258.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1992.

Decided April 17, 1992.

---

Adam H. Kurland, with whom R. Kenneth Mundy was on the brief, for appellant.

Elizabeth Trosman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Judith E. Retchin, and Richard W. Roberts, Asst. U.S. Attys., were on the brief, for appellee.

Before BUCKLEY, WILLIAMS, and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Marion S. Barry appeals a district court order that, on remand, resentenced him to six months' imprisonment for possession of cocaine. First, Barry claims that a lecture delivered by the sentencing judge created an appearance of partiality that required him to recuse himself from the resentencing proceedings. Second, Barry appeals the merits of the sentence on several grounds. Because the remarks did not require his disqualification, and because we find no errors in the resentencing, we affirm.

## I. BACKGROUND

On August 10, 1990, following a trial before U.S. District Court Judge Thomas Penfield Jackson, a jury convicted Marion S. Barry, then Mayor of Washington, D.C., of one misdemeanor count for possession of cocaine. The jury acquitted Barry of another possession charge and could not reach a verdict on the twelve remaining counts.

Sentencing occurred on October 26, 1990. Section 2D2.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides a base offense level of six for simple possession of cocaine, and it appears that the judge enhanced this by two levels after determining that Barry "employed subterfuge and false testimony—his own and that of others—in an attempt to avoid exposure and prosecution altogether." Sentencing Transcript, Oct. 26, 1990, ("Tr. I") at 42; *see United States v. Barry*, 938 F.2d 1327, 1331 (D.C.Cir.1991) (*"Barry I"*) (parties agreed court enhanced sentence two levels for attempted obstruction of justice). At level eight (and criminal history category I), the Guidelines provide a sentencing range of from two to eight months' imprisonment. Nonetheless, citing "evidence of mitigating circumstances operating in the defendant's favor," Judge Jackson sentenced Barry to a six-month term. The defense filed a notice of appeal that same day.

Four days later, on October 30, 1990, Judge Jackson addressed a forum sponsored by the Harvard Law School's Criminal Justice Institute on the subject: "Presiding Over the Marion Barry Trial." The following day, *The Washington Post* carried a front-page story under the headline, "Barry Judge Castigates Four Jurors/Evidence of Guilt Was 'Overwhelming,'/Jackson Tells Forum." The lead paragraph read as follows:

CAMBRIDGE, MASS., Oct. 30—The judge who presided over the drug trial of D.C. Mayor Marion Barry and sentenced him to six months in prison said today he believes four jurors were determined to acquit Barry from the start and misled the court during jury selection about their objectivity.

Wash.Post, Oct. 31, 1990, at A1. The story also reported that the judge had found the evidence that Barry had committed perjury and other crimes "overwhelming," and that he had "no doubt" that Barry had lied to the grand jury. *Id.*

On July 12, 1991, we issued our decision in Barry's appeal from the initial sentencing, in which he challenged both the conviction and the sentence and raised a claim of judicial bias. We affirmed the conviction but remanded the case for resentencing. *Barry I*, 938 F.2d at 1342. We did so because the district court had "not adequately explained how Barry's ... perjurious grand jury testimony was calculated to obstruct the investigation of the offense of conviction," i.e., possession of cocaine while visiting Doris Crenshaw, a woman who would later testify for the prosecution. *Id.* at 1337, 1339. We also found Barry's allegations of judicial bias to be "without merit." *Id.* at 1342.

Following the remand, Barry filed a motion in district court in which he asserted that Judge Jackson's remarks at Harvard had created an appearance of partiality that required him to recuse himself from the case, citing 28 U.S.C. § 455(a) (1988). Judge Jackson denied the motion on September 10, 1991. Barry then filed an emergency petition requesting this court to issue a writ of mandamus directing Judge Jackson to disqualify himself. Applying the heightened standard used in mandamus cases, which required Barry to show a "clear and indisputable" right to the requested relief, we dismissed the emergency petition on September 26, 1991. *See In re Barry*, 946 F.2d 913, 914 (D.C.Cir.1991) (*"Barry II"*). Barry was resentenced on the following day.

At the second sentencing hearing, Barry moved for a continuance so that a supplemental presentence report might be prepared; this motion was denied. The judge began his sentencing calculation by finding the Guidelines base offense level to be six. Barry sought a two-level reduction for acceptance of responsibility for his crime. *See* U.S.S.G. § 3E1.1. The judge denied the reduction, stating that Barry's "expressions of remorse have been belated and perfunctory." Sentencing Transcript, Sept. 27, 1991 ("Tr. II") at 45–46.

The judge noted that he was unable to enhance the offense level by two points for obstruction of justice because Barry's perjured testimony had not related specifically to the offense of conviction. The judge found, nevertheless, that there were two factors that "militate[d] in favor of a sen-

tence at the upper limit of the guideline range [of zero to six months]." The first was Barry's position as Mayor of the District of Columbia, which

> imposed upon him the duty and responsibility to faithfully execute the laws which, at the least, ought to require that he obey them himself, and that he do nothing to encourage, entice, or condone disobedience of them by others.

*Id.* at 46. The second was his attempted obstruction of justice.

Judge Jackson recognized that at the initial sentencing, he had taken Barry's efforts at self-rehabilitation into consideration as mitigating factors. He nevertheless concluded that, in light of the reduced sentencing level, Barry's "rehabilitative efforts [were] not sufficient to overcome the combined effect of those considerations previously mentioned," namely, breach of trust and obstruction of justice. He therefore resentenced Barry to six months' imprisonment, the same punishment imposed at the initial sentencing.

Barry now appeals the district court's denial of his motion for recusal and the resentencing. He asserts, as to the first, that because Judge Jackson was required by section 455(a) to recuse himself, this court must vacate his sentence and assign the case to another judge for resentencing. If we reject this position, Barry maintains that we must nevertheless return the case for resentencing on the ground, among others, that Judge Jackson had failed to consider evidence of genuine contrition.

## II. DISCUSSION

### A. Motion to Disqualify

This case illustrates the wisdom of Canon 3 A(6) of the Model Code of Judicial Conduct (1990), which states that a "judge should abstain from public comment about a pending or impending proceeding in any court." As a consequence of Judge Jackson's remarks, this court must consider for a second time whether he exhibited a bias against Barry that required his disqualification. Furthermore, the media reports of his Harvard speech may well have caused a number of persons in the Washington area to question his impartiality.

The issue before us, however, is not whether Judge Jackson should have recused himself, but whether he was required by 28 U.S.C. § 455(a) to do so. Section 455(a) reads as follows:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

We have long held that to be disqualifying, the appearance of bias or prejudice must stem from an extrajudicial source. *See Barry I*, 938 F.2d at 1340; *United States v. Heldt*, 668 F.2d 1238, 1271–72 & n. 71 (D.C.Cir.1981), *cert. denied sub nom. Hubbard v. United States*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Haldeman*, 559 F.2d 31, 132–34 & n. 297 (D.C.Cir.1976) (*en banc*), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). A judge's comments on a case are deemed to be "extrajudicial" only if they have "some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

■ Thus, remarks reflecting even strong views about a defendant will not call for a judge's recusal so long as those views are based on his own observations during the performance of his judicial duties. Furthermore, even if the remarks should prove to have been derived from an extrajudicial source, they will not require a judge to disqualify himself unless they are of such a character that "an informed observer would reasonably question the judge's impartiality." *Barry II*, 946 F.2d at 914; *see also Heldt*, 668 F.2d at 1273–74 (recusal not required under section 455(a) where statements "not sufficient to raise the appearance of prejudice in the mind of a reasonable person who is familiar with all the facts").

■ Barry argued that Judge Jackson's remarks at Harvard were "extrajudicial in nature" and that his comments on the four jurors had been based not on his observations of the jury, but on post-trial inter-

views that had appeared in the Washington, D.C., media. In denying Barry's motion for recusal, the judge stated that

> to the extent my "Harvard remarks" reflected on the defendant, and upon my assessment of his guilt or innocence of the charges against him, they were based entirely upon the evidence adduced at his trial during the months of June through August, 1990, over which I presided. Their substance is thus derived from a judicial source, and affords no basis for disqualification. *United States v. Grinnell Corp.,* 384 U.S. 563, 583 [86 S.Ct. 1698, 1710, 16 L.Ed.2d 778] (1966).
>
> To the extent the remarks reflected on the jury, they were once again based on my observation of the jurors' performance during the trial, confirmed, however, by published reports of interviews of several jurors appearing post-trial in the local press.

*United States v. Barry,* No. 90–0068, mem. and order at 2, 1990 WL 174907 (Sept. 10, 1991).

A comparison between Judge Jackson's remarks at the Harvard forum and those made by him at the first sentencing will indicate which, if any, of the former are extrajudicial. In his motion to disqualify, Barry sought the judge's recusal based on the following specific remarks, as reported by two students who had attended the lecture:

> [Judge Jackson said] he is convinced Barry is guilty of perjury and other crimes and that "he has never seen a stronger government case." ... "I am not happy with the way the jury addressed this case.... Some people on the jury ... had their own agendas. They would not convict under any circumstances." The judge said he believes four jurors were determined to acquit regardless of the facts. He said they "obviously did not tell the truth" during jury selection when questioned about possible bias.

Motion to Disqualify Judge on Grounds of Appearance of Partiality Pursuant to 28 U.S.C. § 455, filed Aug. 12, 1991, *reprinted in* Appellant's Appendix ("AA") at 3 (citing declarations submitted by Linda J. Singer and Julia R. Gordon). At the initial sentencing, which preceded his Harvard appearance by four days, Judge Jackson had made the following observations:

> There are ... other aggravating circumstances to be taken into account. First, although the verdict represents the defendant's first conviction, and is of what some might call a minor crime, the court finds that the offense of which he stands convicted was neither his first nor his last such offense.
>
> Second, I find from the evidence that the defendant employed subterfuge and false testimony—his own and that of others—in an attempt to avoid exposure and prosecution altogether.
>
> The court concludes the defendant's conduct in that regard represented a willful attempt at obstruction of justice.
>
> I am ignoring, for purposes of sentencing, what I perceive to have been the defendant's efforts, once prosecution had commenced, to induce the jury to disregard the law and the evidence. The jurors will have to answer to themselves and to their fellow citizens for the way in which they discharged their duty.

Tr. I at 42–43.

As will be seen from the above, virtually every remark cited by Barry in his motion to disqualify had been foreshadowed by the judge's comments at the October 26, 1990, sentencing. By the end of the trial, Judge Jackson had concluded, on the basis of his observations of the evidence presented by the Government and of the defendant and the jurors, that Barry was guilty of perjury and other crimes, that the jury had disregarded its duty to weigh the evidence and apply the law, and that at least some of the jurors had cause to search their consciences. The only statement the judge made at Harvard that went beyond his earlier findings was that four of the jurors had lied about their impartiality during the jury selection process. That is the only element of the Harvard remarks that could have had an extrajudicial source.

But even if that particular datum had its source in post-trial press reports, as appears likely, we see no basis for concluding from this one assertion that a reasonable

person familiar with the facts of the case would have questioned Judge Jackson's impartiality towards Barry. As he stated in denying the recusal motion, "[m]y comments respecting the jurors ... bespeak nothing about my attitude toward the defendant." *Barry*, mem. and order at 2 n. 1.

There can be no question that by the end of the trial, that attitude was one of profound disapproval. At the initial sentencing, Judge Jackson had this to say about Barry's behavior:

> Of greatest significance to me in sentencing this defendant is the high public office he has at all relevant times occupied. He was at the time of his offense, the time of his conviction and is now at the time of his sentencing, the elected head of government, as mayor the chief public official and personage of the City of Washington, D.C., the capital of the United States.
>
> His breach of public trust alone warrants an enhanced sentence....

> .     .     .     .     .

> Moreover, the prevalence of the public rumors of defendant's frequent and conspicuous drug use—never dispelled, and now unfortunately shown to have been true—has given aid, comfort, and encouragement to the drug culture at large, and contributed to the anguish that illegal drugs have inflicted on this city in so many ways for so long.

> .     .     .     .     .

> The cocaine the defendant used with Ms. Crenshaw in November of 1989 was procured from some third person. It is not unlikely that that person was someone like the 35–year–old small-time drug dealer who was convicted in this court and sentenced in January, 1990, to a mandatory minimum prison term of 35 years without parole.
>
> It might also have been a person like the 22–year–old Howard University student who began serving a mandatory minimum sentence of 12 years, 7 months, in July of 1989, also without parole, for

distributing drugs on and around the University campus.

> .     .     .     .     .

> Proportionate justice would seem to call for some fairly comparable penalty for him.

Tr. I at 41–44. Yet despite these very strong feelings about Barry's conduct, despite his belief that Barry had committed perjury and other crimes of which the jury had failed to convict him, Judge Jackson ordered Barry imprisoned for six months rather than the maximum of eight he then believed to be authorized by the Guidelines. He did so because he found

> that there is evidence of mitigating circumstances operating in the defendant's favor, and I believe he is entitled to their benefit despite his persistence, until the moment of his sentencing, in a formal attitude of denial.
>
> He has admitted to being an alcoholic. And I find, from the evidence I have heard and his attorney's judicial admission, as well as the defendant's belated acknowledgment, that he is also a compulsive user of cocaine.
>
> He is, thus, in a sense a victim as well as a perpetrator and deserving of as much compassion as anyone so afflicted, however he may have come to it.
>
> It appears, moreover, that at the moment he is making significant and sustained progress at self-rehabilitation, and that he enjoys the support of his family, his true friends, and his church as he endeavors to do so.

*Id.* at 44.

We see no trace of bias in this sentencing, and we cannot believe that a reasonable observer familiar with this record could believe that Judge Jackson would later punish Barry for the additional sins of four jurors he already believed had betrayed their duty. We conclude, therefore, that section 455(a) did not require Judge Jackson's disqualification.

**B. Challenges to the Resentencing Decision**

Barry also raises three challenges to the district court's resentencing decision. Spe-

cifically, he claims that: (1) the court erred in denying his request for a supplemental presentence report; (2) it erred in not awarding him a two-point reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility; and (3) it violated due process by vindictively sentencing him in response to his successful appeal of the initial sentence. For the reasons discussed below, we reject these challenges.

### 1. *Request for a Supplemental Presentence Report*

■ Prior to Barry's initial sentencing, a probation officer prepared a presentence investigation report that included a determination that he had not accepted responsibility for his crime and therefore did not qualify for a two-point downward departure. During the resentencing hearing, the court denied Barry's request for an updated report. Barry now argues that the denial violated both Rule 32(a) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3661.

Rule 32(a) provides:

Prior to the sentencing hearing, the court shall provide the counsel for the defendant ... with notice of the probation officer's determination, pursuant to ... subdivision (c)(2)(B), of the sentencing classifications and sentencing guideline range believed to be applicable to the case.

The initial presentence report had given Barry the required notice of the probation officer's recommendations on sentencing classifications and ranges. Absent a change of mind by the probation officer, which Barry has not alleged, we see no basis in Rule 32(a) for requiring that the report be supplemented.

Barry also invokes 18 U.S.C. § 3661, which states:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

This section does not mandate the preparation of presentence reports. Moreover, Barry concedes that the court allowed him to submit new information that he deemed to be relevant to his resentencing. Brief for Appellant at 30. This included updated information concerning his rehabilitation efforts and the community service he had performed between the first and second sentencings. *See* Defendant's Submission Re: Sentencing Issues and Guidelines Calculations, Sept. 20, 1991, at 13; Tr. II at 21–23, 25–27. Because the court placed no limitation on the introduction of information concerning Barry's background, character, and conduct, we see no violation of 18 U.S.C. § 3661.

### 2. *Acceptance of Responsibility*

■ At the resentencing, the court found that Barry had not accepted responsibility for his criminal conduct and, therefore, was not qualified for a reduction of his sentencing level under Guidelines section 3E1.1. That section states in part: "(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Barry argues that the district court erred in not awarding him this reduction.

Barry concedes that the section 3E1.1 determination is committed to the discretion of the trial court. Comment 5 to section 3E1.1 states that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." We have held:

With the defendant before him, the sentencing judge is unquestionably in a better position to assess contrition and candor than is an appellate court. Courts have held that these determinations are entitled, *at the least,* to the benefit of the clearly erroneous standard of review.

*United States v. Taylor,* 937 F.2d 676, 680 (D.C.Cir.1991) (emphasis added). In addition to overcoming this deferential standard of review, Barry must prove that he was entitled to the reduction. *See United States v. Burke,* 888 F.2d 862, 869 n. 10

(D.C.Cir.1989) ("The defendant properly bears the burden of proof under those sections of the Guidelines that define mitigating factors.").

Barry relies on evidence that he was willing to plead guilty to four misdemeanor drug possession counts in advance of trial. Although this evidence is relevant, it is not in and of itself sufficient. As explained in section 3E1.1 and its related commentary:

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

*Commentary*

\*    \*    \*    \*    \*    \*

3) Entry of a plea of guilty prior to the commencement of trial *combined with* truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

U.S.S.G. § 3E1.1 (emphasis supplied).

The court had ample reason to conclude that Barry had not accepted personal responsibility for his criminal conduct. At the initial sentencing, the Government read into the record the following remarks made by Barry in the course of an interview published in *The Washington Post* on May 30, 1990:

I think prosecutors know that in this town, all it takes is one juror saying, "I'm not going to convict Marion Barry. I don't care what you say."

.    .    .    .    .

I may be a poor role model, but being a poor role model is not a crime.

.    .    .    .    .

What's the worst [government witnesses] could say? That I'd used cocaine with them before? That's not damaging. People already think that. A lot of people do.

.    .    .    .    .

They can't say we shot anybody, we robbed anybody, that we had a scheme to steal a million dollars from the D.C. Government. That's why I feel good about proceeding ahead, even in the worst case.

Tr. I at 33–34. The prosecutor noted that on three subsequent dates (June 19, June 21, and July 3), Barry referred to Government witnesses as "canaries singing." These statements are not disputed. As the prosecutor put it, the man who made them "can hardly be described as someone who has accepted responsibility for his criminal conduct." *Id.* at 34.

The court also had the benefit of the presentence report, in which the parole officer noted that following his conviction, Barry had told him "that he quite frankly could not recall going to Ms. Crenshaw's room and that the allegation of drug use with her was not true." This, of course, was the offense for which he was convicted. Courts have routinely relied upon defendants' interviews with probation officers in denying section 3E1.1 reductions. *See, e.g., United States v. Salmon,* 944 F.2d 1106, 1127–28 (3d Cir.1991); *United States v. Osborne,* 931 F.2d 1139, 1155–56 (7th Cir.1991).

Given the parole officer's report, given the statements made by Barry in his *Washington Post* interview, and given the great deference due a sentencing judge, we cannot conclude that the court clearly erred in denying Barry the section 3E1.1 reduction. As the Fourth Circuit recently observed, "[appellant's] claim that he was entitled to this mitigating factor while at the same time denying the criminal conduct for which he was convicted by a jury borders on the frivolous." *United States v. Gordon,* 895 F.2d 932, 937 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990).

3. *The Alleged Vindictiveness in the Resentencing*

■ Barry asserts, finally, that the district court impermissibly retaliated against him because he exercised his constitutional right to appeal his conviction and the first

sentencing decision. Barry bases this claim on statements made by Judge Jackson in discussing the appropriateness of a two-point reduction for acceptance of responsibility under Guidelines section 3E1.1:

> Defendant submits that he is entitled to a reduction in the base offense level for his acceptance of responsibility, pursuant to ... section 3E1. The Court disagrees. It finds that defendant's conduct since his conviction reflects anything but a genuine acceptance of responsibility.

> He has implied that his prosecution and punishment were politically and racially motivated, and has argued unsuccessfully on appeal that the evidence of his guilt was insufficient.

> His expressions of remorse have been belated and perfunctory. They sound more in the nature of regret at the discovery of the offense than of its criminality, and to the extent they may appear otherwise, the court regards them as compromised by a transparently forensic motive. The two-level reduction in the base offense level is denied.

Tr. II at 45–46.

In support of his contention that the second sentence was vindictive, Barry notes that on resentencing, he was given the maximum Guideline penalty of six months' imprisonment whereas at the first sentencing, Judge Jackson had reduced what he believed to have been the eight-month maximum by two months in consideration of the "evidence of mitigating circumstances operating in the defendant's favor," namely, his "significant and sustained progress at self-rehabilitation." Tr. I at 44. Barry maintains that Judge Jackson refused to reduce his sentence to less than six months in retaliation for his successful appeal of the first sentence, and that he did so in violation of the principles set forth in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In that case, the Supreme Court held that due process

> requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.... [D]ue process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a *more severe sentence* upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

*Id.* at 725–26, 89 S.Ct. at 2080–81 (emphasis supplied; footnote omitted).

In *Pearce*, the defendant had been given a more severe sentence on remand than he had received initially. Barry, by contrast, was awarded the same sentence—six months—in each instance. It could be argued, of course, that *Pearce* nevertheless applies here because the appellate decision required the district court to reduce the sentencing offense level; the reasoning being that under such circumstances, the award of the same penalty on remand is tantamount to an increase in its relative severity. *Pearce*, however, does not foreclose the possibility of increased sentences on remand. It merely requires that a court explain its choice of an enhanced sentence to ensure that the more severe sentence is not motivated by vindictiveness. *See id.* at 726, 89 S.Ct. at 2081. Here, the judge provided an entirely credible, non-vindictive rationale for his resentencing decision.

Judge Jackson found, on remand, that the trial evidence could not support an offense level enhancement for obstruction of justice because his perjury and inducement to perjury had not been directed to the offense of conviction. He found, however, that Barry's abuse of public trust and his obstructive conduct justified a sentence "at the upper limit of the guideline range." He then concluded:

> The [two-level] enhancement [for obstruction of justice] now having been found inapplicable, the defendant has, thus, by operation of law, received a *de facto* reduction by two levels of the sentencing range contemplated by the court when it imposed sentence originally, and, in the court's judgment, defendant's re-

habilitative efforts are not sufficient to overcome the combined effect of those considerations previously mentioned which, although not warranting enhancement, nevertheless militate in favor of a sentence at the upper limit of the guideline range.

Tr. II at 48–49. It is clear, then, that the judge did not ignore Barry's rehabilitation efforts. Instead, he found that although those efforts had warranted a reduction in Barry's sentence from eight months to six, the other aggravating factors precluded a further reduction.

Guidelines section 1B1.4 provides that

[i]n determining the sentence to impose within the guideline range, ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.

We have recently reaffirmed that "[t]he sentencing court has discretion within that range." *United States v. Green*, 952 F.2d 414, 416 (D.C.Cir.1991).

We conclude that Judge Jackson did not abuse his discretion in sentencing Barry at the upper limit of offense level six's zero-to-six-month range. In the prior sentencing, Judge Jackson used Barry's obstruction of justice to justify raising the offense level. Thus, this factor played no part in his determination of the sentence within the expanded range. On remand, upon determining that the obstruction of justice could not be used to raise the offense level, the judge was free to use this factor in deciding the appropriate sentence within the reduced range. Although Barry's appeal had resulted in a reduction in his offense level, the totality of the circumstances had not changed. Judge Jackson's resentencing decision merely reflected that reality.

### III. Conclusion

For the foregoing reasons, we affirm both the denial of Barry's motion for disqualification and his six-month prison sentence.

*So ordered.*