988 F.2d 126
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peter H. THOMAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry Lee SCHULLE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael E. HILANDER, Defendant-Appellant.
 Nos. 91-30415,* 91-30449* and
92-30208.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided Feb. 10, 1993.
As Amended on Denial of Rehearing March 26, 1993.
 
 Appeal from the United States District Court for the Western District of Washington; No. CR-90-1078-RJB, Robert J. Bryan, District Judge, Presiding.
 W.D.Wash.
 AFFIRMED.
 MEMORANDUM**
 Before TANG, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 Peter H. Thomas, Henry Lee Schulle, and Michael E. Hilander appeal their sentences under the Sentencing Guidelines on their guilty plea convictions for RICO offenses in violation of 18 U.S.C. § 1962(c).[1] We affirm.
 
 
 2
 In October 1990, appellants, along with twelve others, were indicted for RICO and additional offenses primarily related to the activities of a criminal enterprise known as the Mansford Corporation.
 
 
 3
 Schulle pled guilty to Count II of the indictment, which charged racketeering violations under 18 U.S.C. § 1962(c) and aiding and abetting under 18 U.S.C. § 2. On appeal he identifies no specific error in the court's computation of his sentence under the Guidelines. Indeed, at sentencing he accepted the offense level set out in the presentence report, and limited his argument to reasons for a sentence at the low end of his Guidelines range.
 
 
 4
 In April of 1991, Thomas and Hilander were charged with RICO and other offenses in a superseding indictment. That indictment focused on the activities of Texacal International, Inc., a criminal enterprise which grew out of the Mansford Corporation. Both pled guilty to Count I of the superseding indictment, which charged them with racketeering violations under 18 U.S.C. § 1962(c).
 
 
 5
 Thomas had prepared various false financial statements and tax returns for Texacal, himself, and other members of the enterprise, which were fraudulently used to induce lenders and lessors to make loans and leases to the enterprise or its members. He was sentenced to 73 months imprisonment and ordered to pay $4,382,700 in restitution. He contends that the court misapplied the Guidelines by increasing his offense level fourteen points rather than thirteen points under U.S.S.G. 2F1.1(b)(1).[2] Thomas also asserts that the court erred by failing to apply the two point downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1.
 
 
 6
 Hilander, along with Schulle and two others, created Texacal as a vehicle for devising "schemes and artifices to defraud and for obtaining money and property." He eventually became president and a 25 percent shareholder of Texacal and, as he agreed at the time of his plea, "personally engaged in numerous real estate and credit transactions in which he knowingly used false and fraudulent financial statements and tax returns for Texacal to induce various credit providers to enter into financial transactions...."
 
 
 7
 Hilander was sentenced to 67 months imprisonment and ordered to pay $5,615,640 in restitution. Under U.S.S.G. § 3B1.1(a), the court found that Hilander was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," and applied the prescribed four point increase to his offense level. Hilander contends that the court erred in applying the increase because his role was equal to that of the three other principals of Texacal. He also argues that there was insufficient evidence to support a finding of a leadership role.
 
 A. Thomas
 1. Offense Level Calculation
 
 8
 The court implicitly found that the loss attributable to Thomas was more than $5 million and less than $10 million when it applied the fourteen level increase under Guidelines section 2F1.1(b)(1)(O) (requiring a 14 level increase where the loss exceeds $5 million). Thomas made no objection to this finding during sentencing. Thomas now argues that only a thirteen point increase was warranted because the court found him liable for only $4,382,700 in restitution. We have held that the failure to object to the district court's Sentencing Guidelines calculation waives the right to appeal. United States v. Visman, 919 F.2d 1390, 1394 (9th Cir.1990), cert. denied, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991). Thus, we will not consider this argument.[3]
 
 2. Acceptance of Responsibility
 
 9
 Whether an adjustment for acceptance of responsibility is appropriate is a factual finding reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990). The defendant must "clearly demonstrate[ ] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). "A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." Id. § 3E1.1(c). Moreover, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." Id. § 3E1.1, comment. (n. 5). Finally, the defendant "must prove that he was entitled to the reduction." United States v. Barry, 961 F.2d 260, 266 (D.C.Cir.1992); see United States v. Howard, 894 F.2d 1085, 1089-90 (9th Cir.1990).
 
 
 10
 Thomas asserts that the court erred in failing to apply the two point reduction because he accepted responsibility to the best of his ability due to his alcoholism existing at the time of his sentencing. Thomas complains that the court's action effectively punished him for an illness or mental disorder over which he had no control. There is no authority that permits, much less requires, a court to take evidence of alcoholism or "emotional disorders" into account as the basis for an acceptance of responsibility departure.
 
 
 11
 At sentencing the court gave serious consideration to Thomas's alcoholism, but found that it did not mitigate the fact that he failed to own up to his responsibility for the offense. This is precisely the kind of balancing reserved for the district court under the Guidelines. It did not commit clear error in finding no basis for an acceptance of responsibility departure.[4]
 
 B. Schulle
 
 12
 At sentencing Schulle did not object to his base offense level of twenty-two, nor did he object to any of the upward departures (aggravating role in the offense and obstruction of justice), which added up to a level of twenty-eight. The court then deducted two points for acceptance of responsibility, for a final offense level of twenty-six. The only issue raised at sentencing was what sentence he should receive within his Guidelines range. As a result, Schulle waived his appeal as to the court's calculation of his offense level. Visman, 919 F.2d at 1394. We, therefore, reject his claims on appeal.[5]
 
 C. Hilander
 1. Aggravating Role in The Offense
 
 13
 The Guidelines provide that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." U.S.S.G. § 3B1.1(a). The Commission explains that the determination of whether the defendant has an "aggravating role" under this section "is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. B, intro. comment. Accordingly, the district court was bound to consider the racketeering acts which "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); see also United States v. Smith, No. 91-50029, slip op. 14241, 14247 (9th Cir. Dec. 9, 1992) ("[T]he plain language of the Sentencing Guidelines demonstrates that the term 'relevant conduct' extends to acts that are part of the same general criminal scheme.").
 
 
 14
 The purpose of the aggravating role adjustment is to address concerns about "relative responsibility," by "provid[ing] a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense." U.S.S.G. § 3B1.1 comment. (backg'd). The court is to consider the extent of the defendant's actual involvement and, of course, there can be more than one leader or organizer. Id. comment. (n. 3).
 
 
 15
 Hilander first argues that because evidence presented at sentencing showed that his culpability was roughly equal to that of the other three Texacal principals, he cannot be classified as an organizer or leader. He asserts that if all of the participants are in equal positions there can be no leader. United States v. Katora, No. 91-3505, slip op. at 19 (3d Cir. Dec. 7, 1992) (section 3B1.1 applies only where there are "multiple participants and some differentiation in their relative culpabilities."); see also United States v. Anderson, 942 F.2d 606, 617 (9th Cir.1991) (en banc) (an offense involving only a single participant affords no basis for assessing a role in the offense increase); United States v. Williams, 891 F.2d 921, 926 (D.C.Cir.1989) (same); United States v. Tetzlaff, 896 F.2d 1071, 1074-75 (7th Cir.1990) (same).
 
 
 16
 Despite Hilander's assertions, the evidence indicates that Texacal was not a simple four person organization in which each shareholder (Hilander, Schulle, Frank Pugliese, and Charles Hayes) exercised equal decisionmaking authority. Rather, these four participants supervised and worked closely with many others including Thomas, Charles Sketoe, Jr., Richard Cauble, and Bradley Ray to accomplish the frauds. We have held that a finding of leader or organizer does not require that the defendant personally supervised each of the participants. United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991).
 
 
 17
 Hilander also argues that there was insufficient evidence to support a finding that he was an organizer or leader. United States v. Sostre, 967 F.2d 728, 733 (1st Cir.1992). We disagree.
 
 
 18
 There was evidence to show that he was not merely a figurehead who tended to follow the dictates of codefendants Schulle or Pugliese. He helped create Texacal, was its president, and made false financial statements available for the other participants. In addition, Hilander almost always took the leadership role at closings for the fraudulent transactions. He not only made specific fraudulent misrepresentations, but also typically signed the documents on behalf of Texacal. He travelled from Wisconsin to Texas when deals reached the closing stage. In fact, Linda Whitehall testified that Hilander always got his money first, even to the exclusion of herself, Schulle, and everyone else. Hilander's involvement did evidence a substantial level of control and authority over others. Accordingly, the district court's conclusion was not clearly erroneous.[6]
 
 
 19
 The district court's judgments are AFFIRMED as to Thomas, Schulle, and Hilander.
 
 
 20
 The motion of Joseph R. Cicero to withdraw as counsel for Thomas is GRANTED. The motion of Ronald D. Ness to withdraw as counsel for Schulle is GRANTED.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Thomas and Schulle have not filed briefs on appeal; their counsel both filed briefs pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)
 
 
 [2]
 All Sentencing Guidelines references are to the November 1990 edition
 
 
 [3]
 At any rate, Thomas acknowledged in his plea agreement that the loss figure to be used by the Court in computing the total offense level was between $5 and $10 million. He also agreed that his fine could be twice the gross loss--that is, about $10,012,350
 
 
 [4]
 After a full examination of the case, we find no merit to the appeal. We also grant counsel's motion to withdraw
 
 
 [5]
 We have, however, gone over the calculations and find no error in them. After a full examination of the case, we find no merit to the appeal. We also grant counsel's motion to withdraw
 
 
 [6]
 In a "Supplemental Reply Brief" Hilander for the first time argues that the district court impermissibly "double counted" by enhancing Hilander's sentence under both U.S.S.G. § 2F1.1(b)(2) and U.S.S.G. § 3B1.1(a). Hilander failed to raise the issue below. By failing to do so, he has waived it on appeal. Moreover, we need not consider arguments not " 'specifically and distinctly raised and argued in appellant's opening brief.' " Cross v. Washington, 911 F.2d 341, 345 (9th Cir.1990) (quoting International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985)), cert. denied, 111 S.Ct. 1313, 113 L.Ed.2d 247 (1991). We decline to consider this issue