IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70065-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JEFFRY DAVID SANDVIG, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 5, 2014 |

SCHINDLER, J. — A jury convicted Jeffry David Sandvig of two counts of rape of a child in the second degree, child molestation in the second degree, and rape of a child in the third degree. With an offender score of 9, the court sentenced Sandvig to a concurrent mid-range sentence of 245 months. We reversed the conviction of rape of a child in the third degree for failure to give a unanimity instruction. With an offender score of 6, the trial court resentenced Sandvig to a concurrent high-end standard-range sentence of 194 months for the two counts of rape of a child in the second degree. Sandvig argues the court violated his due process rights on remand by vindictively imposing a high-end sentence. Because the court imposed a less severe sentence and the record establishes a wholly logical nonvindictive reason for imposing a 194-month concurrent sentence, we affirm.

## FACTS

In 1996, Jeffry David Sandvig started living with his girlfriend T.T. and her three-year-old daughter T.W. In 2005, Sandvig began having a sexual relationship with 12-year-old T.W. When she was 16, T.W. told her mother about the ongoing sexual relationship.

The State charged Sandvig with two counts of rape of child in the second degree, Count I and Count II, molestation of a child in the second degree, Count III, and rape of a child in the third degree, Count IV.

Because T.W.'s mother worked during the day and Sandvig worked evenings, Sandvig was often home in the afternoon when T.W. got out of school. T.W. testified that Sandvig molested her repeatedly over the course of four years.

T.W. testified that when she was 12-years-old, Sandvig began hugging her, kissing her cheek, and taking photographs of her dressed up in her mother's clothes. T.W. said that several months later, Sandvig began molesting her, and on at least four occasions, Sandvig made her perform fellatio on him. T.W. testified that Sandvig digitally penetrated her vagina at least five different times, and put his penis between her buttocks and moved it back and forth at least 10 other times. When T.W. was 13, Sandvig began taking naked photographs of her. When T.W. was 14, Sandvig made her watch pornographic movies with him. T.W. testified that when she was 13 or 14, Sandvig attempted to have vaginal and anal intercourse with her.

T.W. testified that she was confused and too scared to tell anyone. T.W. said that when she told Sandvig she did not feel right about what he was doing, Sandvig told her that she was his "little sex toy" and if she said anything to anyone, her "whole family

was going to be ripped apart . . . and he would go to jail and I would feel bad for the rest of my life." Sandvig told T.W. that he could "do whatever he wanted to me because I was just a little freak for him to do whatever he wanted." T.W. testified that when she refused Sandvig's advances, he would negotiate with her and bribe her with money or shopping trips. T.W. said that on other occasions, Sandvig would go days without talking to her, ostracize her, and tell her mother that T.W. was "out of control" and "horrible" and "needs to go somewhere after school because I can't deal with her."

The jury convicted Sandvig as charged. With an offender score of 9, the standard-range sentence on the two counts of rape of a child in the second degree, Counts I and II, was 210 to 280 months; the standard range for molestation of a child in the second degree, Count III, was 87 to 116 months; and the standard range for rape of a child in the third degree, Count IV, was 60 months. The State recommended an indeterminate mid-range sentence of 245 months on Counts I and II, and a concurrent determinate sentence of 116 months on Count III and 60 months on Count IV.

At sentencing, the prosecutor argued that a mid-range indeterminate sentence of 245 months was warranted based on the prolonged pattern of abuse and the impact of the abuse on T.W. The prosecutor stated, in pertinent part:

> In the times that I have been trying sex cases, this will be one of the most graphic testimony that I have been involved with where you have a victim get on the stand and testify in open court to multiple acts of just horrendous molestation at the hands of someone who is to be loco parentis to her, someone who should have been a stepfather and a father-like figure to this child. . . .
> I do think that a range -- considering the years, the multiple times that these acts occurred, the brainwashing that this child had to go through to get to this point and the damage that has been inflicted upon this child and the length of time it's going to take to bring this child, if ever, back to a proper functioning level free from these emotional scars, I think 245 is the least that can be imposed in this case.

3

Before imposing the sentence, the court explained that its practice was to start in the middle of the standard range:

> My position on sentencing is generally to begin in the middle, mid range, treat everybody the same, and tell me reasons to go up or reasons to go down within that sentencing range. And that's kind of how, in all fairness, I start with all my significant sentencings.

But the court stated the facts at trial were "beyond the normal child rape cases" and the case "calls out for the high end sentencing range." The court stated, in pertinent part:

> [T]he facts that are presented to me in this case are beyond the normal child rape cases that I have seen come before me, and it's beyond the normal because this was an act that occurred over a four year period. And frankly, if anything calls out for the high end sentencing range, this does, given the fact of four years of abuse.
>
> I am stunned, frankly, that this child isn't in worse shape than what she presented here at trial. She has found a way to live with what has happened to her and move on with her life to the best of her ability, but at some point in time there will be a reckoning.

The court then followed the State's recommendation to impose a mid-range indeterminate sentence of 245 months to life for Counts I and II, and a concurrent sentence of 116 months for Count III and 60 months on Count IV.

Sandvig appealed his conviction for rape of a child in the third degree, Count IV. We reversed the conviction on Count IV because the court did not give a unanimity instruction. State v. Sandvig, noted at 169 Wn. App. 1025, 2012 WL 2989593, at *1.

On remand, after consultation with T.W., the State elected not to re-try Sandvig on the charge of rape of a child in the third degree, and filed a motion to dismiss Count IV. The court granted the motion to dismiss rape of a child in the third degree, Count IV, resulting in reduction of the offender score from 9 to 6. With an offender score of 6, the

4

standard-range sentence for the two convictions for rape of a child in the second degree, Counts I and II, was 146 to 194 months, and the standard range for the conviction of molestation of a child in the second degree, Count III, was 57 to 75 months.

The State asked the court to impose a high-end standard-range sentence of 194 months on Counts I and II, and a concurrent 75-month sentence on Count III.

Sandvig filed a "Re-Sentencing Memorandum" asking the court to impose a sentence of 170 months for the two convictions for rape of a child in the second degree and a concurrent mid-range sentence for molestation of a child in the second degree. Sandvig asserted a mid-range 170-month sentence was consistent with the previous imposition of a mid-range sentence of 245 months. Sandvig argued that under North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969),[1] increasing the sentence above the middle of the standard range would violate due process by penalizing Sandvig for exercising his right to appeal.

The State filed a memorandum arguing that because it was seeking a less severe sentence, Pearce did not apply. The State asserted the severity of the conduct warranted a high-end 194-month sentence because the facts at trial "create[d] a picture of an ongoing and protracted pattern of abuse that still is relevant to the imposition of the sentence on Counts I through III."

The court ruled Pearce did not apply and rejected the argument that it was bound to impose a sentence in the middle of the newly-calculated standard range:

> I don't believe that [Pearce's] reasoning is applicable, frankly, to this particular set of facts . . . . Frankly, I think I concur with some of the

---

[1] Overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

analysis of making sure that a defendant is not subject to vindictive action for exercising constitutional rights to challenge convictions and making sure, as a sentencing court, to look at the facts before the Court at the time it comes before the Court.

The court considered the impact of the crimes on the victim and the total amount of time imposed before concluding a high-end sentence was warranted. The court stated that in the prior sentencing it was careful to consider not only where the sentence fell within the standard range, but also the total amount of time imposed. The court ruled, in pertinent part:

> I listened to the victim and the impact that these particular acts had on her. . . . I took that into consideration in fashioning a sentence and determined that the amount of time, not just where it fell in the range, but the amount of time that I had imposed was sufficient in the prior sentencing.
>
> So in coming back for a resentencing based on a recalculation of offender score, I'm not compelled to really start kind of in the middle . . . . All the concerns that the victim had brought forward at the prior sentencing, all the facts that I listened to at the jury trial, are still in play, are still relevant in fashioning a sentence. . . .
>
> The high end of the standard range in Counts I and II is 194 months. It does not shock my conscience to impose that 194 months based upon all the facts that were before me at the prior sentencing, which means that they are before me now.

The court imposed an indeterminate high-end standard-range sentence of 194 months on Counts I and II, and a concurrent 75-month sentence on Count III. Sandvig appeals.

## ANALYSIS

Sandvig contends the concurrent high-end 194-month standard-range sentence on the two counts of rape of a child in the second degree violated his due process rights. Sandvig argues that because the court on remand did not impose a mid-range

sentence of 170 months, the court punished him for exercising his constitutional right to appeal.

The due process clause of the Fourteenth Amendment to the United States Constitution prohibits a judge from vindictively imposing an increased sentence to punish a defendant for successfully exercising his constitutional right to appeal. Pearce, 395 U.S. at 723-25. Under Pearce, a more severe sentence on remand establishes a rebuttable presumption of vindictiveness. State v. Franklin, 56 Wn. App. 915, 920, 786 P.2d 795 (1989). Where the presumption applies, the court must point to an "on-the-record, wholly logical, nonvindictive reason for the sentence." Texas v. McCullough, 475 U.S. 134, 140, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986).

However, where the sentence imposed following appeal is less severe than the sentence originally imposed, there is no presumption of vindictiveness. Franklin, 56 Wn. App. at 920 ("Here, no such presumption is raised as the sentence was not increased."); State v. Larson, 56 Wn. App. 323, 328, 783 P.2d 1093 (1989) (no Pearce presumption arose where "revised aggregate sentence is less severe than [defendant's] original aggregate sentence" and revised sentence "is fully explained by the trial court's original sentencing intent"); United States v. Campbell, 106 F.3d 64, 69 (5th Cir. 1997) (no presumption of vindictiveness arose where defendant's original sentence was 51 months and sentence following appeal was 40 months); United States v. Bay, 820 F.2d 1511, 1514 (9th Cir. 1987) (no presumption of vindictiveness where total sentence reduced).

Here, there is no presumption of vindictiveness because the court imposed a less severe sentence at resentencing. Following trial, the court sentenced Sandvig to

concurrent 245 months on the two counts of rape of a child in the second degree, Counts I and II. On remand, the court sentenced Sandvig to a concurrent 194-month sentence on Counts I and II. Nonetheless, Sandvig relies on United States v. Barry, 961 F.2d 260 (D.C. Cir. 1992), to argue that the Pearce presumption of vindictiveness applies because the court imposed "a proportionately increased sentence on remand."

But Barry does not hold that a proportionally higher sentence is presumptively vindictive. In Barry, a jury convicted the defendant Barry of one count of misdemeanor cocaine possession. Barry, 961 F.2d at 261. The sentencing guidelines provided the base offense level was six. After determining that Barry had falsely testified to the grand jury, the court imposed a two-level increase for falsely testifying and obstruction. Barry, 961 F.2d at 262. With a level of eight, the range was two to eight months. After considering mitigating factors, the court imposed a six-month sentence. Barry, 961 F.2d at 262.

On appeal, the Court held the trial court did not adequately explain how the false grand jury testimony obstructed the investigation of the misdemeanor cocaine possession offense, and remanded for resentencing. Barry, 961 F.2d at 262. On remand, the court concluded it could not apply the two-level increase for obstruction. Without the two-level increase, the sentencing range was zero to six months rather than two to eight months. Barry, 961 F.2d at 262-63. The court concluded a number of factors warranted imposing a high-end sentence of six months. Barry, 961 F.2d at 262-63.

Barry appealed, arguing that Pearce created a rebuttable presumption of vindictiveness because the sentence on remand was relatively more severe in terms of

where it fell within the standard range. Barry, 961 F.2d at 267-68. The Court acknowledged that because the sentence "increase[d] in its relative severity,[ ]it could be argued that Pearce . . . applies here." Barry, 961 F.2d at 268. However, the Court affirmed because "the judge provided an entirely credible, non-vindictive rationale for his resentencing decision." Barry, 961 F.2d at 268.

Here, even if we were to agree, which we do not, that Pearce creates a rebuttable presumption of vindictiveness, the record establishes a logical nonvindictive reason for imposing a high-end concurrent 194-month sentence for the two counts of rape of a child in the second degree. The record shows that on remand, the court concluded that the middle of the newly calculated standard range of 146 to 194 months did not adequately account for the impact on the victim. The court ruled that based on the facts of the case "and the impact that these particular acts had on [T.W.]," the case warranted a high-end standard-range sentence.

We affirm.

WE CONCUR: